**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MERRICK WILSON AND RIVER VALLEY
HEIGHTS CORPORATION,

          Plaintiffs,

v.

TOWNSHIP OF WEST AMWELL,

          Defendant.

Civil Action No. 19-16039 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Township of West Amwell's ("Defendant" or the "Township") Motion to Dismiss Plaintiffs Merrick Wilson and River Valley Heights Corporation's ("Plaintiffs") Complaint.[1] (ECF No. 5.) Plaintiffs opposed (ECF No. 14-3), and Defendant replied (ECF No. 19). Plaintiffs also cross-move for summary judgment and to amend the caption. (ECF No. 18.) Defendant opposed the Cross-Motion (ECF No. 23), and Plaintiffs replied (ECF No. 24). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set

---

[1] The Complaint was originally filed with Academy Hill, Inc. and Merrick Wilson as Plaintiffs. (ECF No. 1.) Plaintiffs' counsel informs the Court that due to an error, Academy Hill, Inc. was incorrectly listed as a Plaintiff instead of River Valley Heights Corporation. (Caldwell Certif. ¶ 4, ECF No. 18-1.) The parties agree that River Valley Heights Corporation, not Academy Hill, Inc., owns the property at issue in this litigation. (Def.'s Moving Br. 2, ECF No. 5-1; Pls.' Opp'n Br. 6, ECF No. 14-3.) Finding good cause to correct the caption, the Court hereby orders that the caption be amended to include the following properly named Plaintiffs: Merrick Wilson and River Valley Heights Corporation. This Memorandum Opinion names the parties as such, as is also reflected in the caption.

forth herein, Defendant's Motion to Dismiss and Plaintiffs' Motion to Amend the Caption are granted. Because the Court grants Defendant's Motion to Dismiss, it does not reach the merits of Plaintiffs' Cross-Motion for Summary Judgment and denies it as moot.

I. **BACKGROUND**

Plaintiffs bring an action under 42 U.S.C. § 1983 alleging a taking of property without just compensation in violation of the Fifth Amendment. Merrick Wilson is the principal of River Valley Heights Corporation ("River Valley"). (Wilson Certif. ¶ 2, ECF No. 18-2.) River Valley, in turn, owns property known as Block 8, Lot 51 in West Amwell, Hunterdon County, New Jersey (the "Property"). (*Id.*)

The Complaint alleges that on December 5, 2018, Defendant took steps to settle litigation between itself and the Fair Share Housing Center by adopting resolution number 116-2018.[2] (Compl. ¶ 2, ECF No. 1.) The resolution authorized execution of a settlement agreement in which

> the Township agreed to 'secure title to [Plaintiffs'] site, Block 8, Lot 51, prior to the entry of final judgment in [the Fair Share Housing litigation]. The Township will transfer title to Habitat for Humanity for the construction of 4 units as soon as clear title for the property is secured.

(*Id.* ¶¶ 2-3 (internal quotations omitted).)

The Complaint asserts that "[b]y entering into such agreement the Township has effectively taken the property of the Plaintiffs without due compensation." (*Id.* ¶ 4.) In their opposition, Plaintiffs provide a certification from Wilson explaining that prior to the settlement agreement's

---

[2] In recent years, the Fair Share Housing Center and a number of New Jersey municipalities have litigated the "municipalities' compliance with [state] constitutional affordable housing obligations." *In re Adoption of N.J.A.C. 5:96 and 5:97 by the New Jersey Council on Affordable Housing*, 110 A.3d 31, 36 (N.J. 2015); *see, e.g., Hassan v. Borough of Emerson*, No. A-4895-18, 2021 WL 475061, at *1 (N.J. App. Div. Feb. 10, 2021).

2

announcement of the Township's intent to acquire the Property in connection with the Fair Share Housing settlement, "the [P]roperty had been under contract for fifty-seven (57) market townhouses and nine (9) affordable rental units, at $130,000/unit amounting to a purchase price in excess of Seven Million Four Hundred Thousand ($7,400,000) Dollars." (Wilson Certif. ¶ 3.) Wilson avers that the Township's designation of the Property for acquisition, however, has "ma[de] it impossible for [him] to market [his] property." (*Id.* ¶ 4.) Plaintiffs acknowledge that "[Defendant] has not adopted a [d]eclaration of [t]aking" pursuant to New Jersey's eminent domain law. (Pls.' Statement of Material Facts ¶ 3, ECF No. 18-3 ("PSMF") (citing N.J. Stat Ann. § 20:3-6); Def.'s Resp. to Statement of Material Facts and Counter-Statement of Material Facts ¶ 3, ECF No. 23-1 ("DRSMF").) Similarly, Plaintiffs acknowledge that "[a]lthough [Defendant] ratified its settlement, it has taken no steps to implement formal condemnation." (Pls.' Opp'n Br. 11.) But Plaintiffs also argue that the Township has taken no steps to negotiate with Plaintiffs on a purchase price for the land, (PSMF ¶ 18; Pls.' Opp'n Br. 11), and that "[t]he lack of action by [Defendant] supports Plaintffs['] contention that its property has been frozen and rendered worthless." (Pls.' Opp'n Br. 11.)

Defendant moves to dismiss the Complaint on the basis that Plaintiffs' takings claim is not ripe. According to Defendant, so far, the Township is only "exploring the possibility of condemning" the Property. (Def.'s Moving Br. 1.) Moreover, "the Township has not filed any condemnation proceedings or reached a final decision as to whether it will seek to acquire the [Property]." (*Id.*)

The Township acknowledges that the settlement agreement includes a plan to acquire the Property, potentially through a condemnation action, in order to fulfill the terms of the settlement agreement. (*Id.* at 3 (citing Settlement Agreement Count 2, Ex. D to St. Angelo Certif., ECF No.

3

5-2).) The Township also asserts, however, that when the New Jersey Superior Court approved the settlement agreement, the court explicitly recognized that "aspects of the Township's Plan regarding the [Property] raises yet unresolved issues concerning (1) whether the Township will follow through to gain control of the site; and (2) whether the site is available, feasible[,] and suitable to meet the Township's proposal, including issues involving access, sewer[,] and water availability." (*Id.* at 3-4 (quoting Feb. 4, 2019 Super. Ct. Op. Approving Settlement Agreement 16, Ex. E to St. Angelo Certif., ECF No. 5-2).) Furthermore, the Superior Court later adopted a July 16, 2019 case management order that explicitly provided that Plaintiffs and Defendant "shall engage in negotiations . . . for the acquisition of the [Property]. If such negotiations do not result in an amicable transaction of sale, the Parties shall discuss a timeline for a *possible* condemnation of the [Property]." (July 16, 2019 Case Management Order ¶ 3, Ex. F to St. Angelo Certif., ECF No. 5-2 (emphasis added).) The same case management order further provided that "[n]othing herein shall obligate the Township to acquire the [Property]." (*Id.*)

In further support of its ripeness arguments, Defendant's Motion attaches a copy of an August 6, 2019 Draft Housing Element and Fair Share Plan ("HEFSP"). With respect to the Property, the HEFSP represents that "[t]he Township *proposes* to obtain Lot 51 in Block 8 located at 2 Rocktown Lambertville Road, also known as the Wilson site" and "intends to construct" affordable housing on the site. (HEFSP 26, Ex. G to St. Angelo Certif., ECF No. 5-2 (emphasis added).)

## II. LEGAL STANDARD

"A challenge to the ripeness of an action for adjudication is appropriately brought as a [Rule 12(b)(1)] motion to dismiss for lack of subject matter jurisdiction." *Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa. 2005) (citing *Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319 (3d Cir. 1998)); *see* 5B Charles Alan Wright & Arthur R. Miller, Federal

4

Practice and Procedure § 1350 (3d ed. 2021) ("Courts have recognized a variety of . . . defenses [that] rais[e] subject-matter jurisdiction questions when considering a Rule 12(b)(1) motion, such as . . . the action is not ripe for judicial adjudication."). "Because ripeness affects justiciability . . . unripe claims should ordinarily be disposed of on a motion to dismiss, not summary judgment." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993). "[T]he district court is not limited to the face of the pleadings in deciding such a motion. As long as the parties are given an adequate opportunity to address the justiciability of the claim, the district court 'may inquire by affidavits or otherwise, into facts as they exist.'" *Id.* at 1290 n.7 (quoting *Armstrong World Indus. Inc. v. Adams*, 961 F.2d 405, 410 n.10 (1992)). "[U]nlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited; conflicting written and oral evidence may be considered and a court may 'decide for itself the factual issues which determine jurisdiction.'" *RLR Invs., LLC v. Town of Kearny*, No. 06-4257, 2007 WL 1797658, at *3 (D.N.J. June 20, 2007).

"Rule 12(b)(1) challenges are either facial or factual attacks." *Wojak v. Borough of Glen Ridge*, No. 16-8106, 2018 WL 901717, at *4 (D.N.J. Feb. 15, 2018). "The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Id.* (citation omitted). "Under the 'facial' 12(b)(1) standard, as under Rule 12(b)(6), the allegations of the complaint are assumed to be true." *Id.* (citation omitted). "In a factual attack, the defendant challenges the court's jurisdiction based on evidence outside the pleadings and the court may review and rely upon any evidence in assessing jurisdiction." *Save Ardmore Coal.*, 419 F. Supp. 2d at 669 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "When resolving a factual

challenge ... the burden of proving jurisdiction rests with the plaintiff." *RLR Invs.*, 2007 WL 1797658, at *3.

Because Defendant's Rule 12(b)(1) Motion relies on evidence outside of the pleadings, the Court construes the Motion as a factual attack on the ripeness of Plaintiffs' takings claim.

### III. DISCUSSION

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V. "The Takings Clause applies to state action through the Fourteenth Amendment." *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012). While Wilson's Certification avers that "on or about March 2019 [the Township] demanded access to the [P]roperty ... for [the] purposes of conducting an appraisal to establish condemnation values," (Wilson Certif. ¶¶ 11-12), Plaintiffs do not appear to allege a paradigmatic taking involving physical invasion or direct appropriation. *Accord with Wojak*, 2018 WL 901717, at *4 ("Under the Takings Clause, it is clear that the government must provide compensation when the government physically takes or permanently occupies property." (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321 (2002); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982))).

Instead, Plaintiffs appear to allege a regulatory taking by Defendant. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005) ("Government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster.... [S]uch 'regulatory takings' may be compensable under the Fifth Amendment."). "For a regulatory taking, there are two distinct tests." *Nekrilov v. City of Jersey City*, No. 19-22182, 2021 WL 1138360, at *6 (D.N.J. Mar. 24, 2021). "The first is the so-called 'per se' taking[.] ... pursuant to which 'a regulation which denies all economically beneficial or productive use of land will require

6

compensation under the Takings Clause' unless the challenged limitations 'inhere . . . in the restrictions that background principles of the State's law of property and nuisance already placed upon land ownership.'" *Id.* (quoting *Murr v. Wisconsin*, 137 S. Ct. 1933, 1937 (2017)). The second regulatory taking test:

> evaluates the alleged taking based on "a complex [set] of factors," including "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action."

*Id.* (quoting *Murr*, 137 S. Ct. at 1937).

Regulatory takings claims are subject to ripeness analysis. Generally, "[t]he ripeness doctrine serves to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (quotation omitted). "[A] claim that the application of a government regulation effects a taking of a property interest is not ripe until . . . the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Carrol v. Twp. of Mount Laurel*, 500 F. App'x 118, 120 (3d Cir. 2012) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985), *abrogated on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019) (noting that "the validity of this finality requirement . . . is not at issue here")).

Here, the Court finds that Plaintiffs' regulatory takings claim is not ripe. It is undisputed that Defendant has taken no action with respect to Plaintiffs' property. (*See, e.g.*, PSMF ¶ 3 ("[The Township] has not adopted a [d]eclaration of [t]aking" pursuant to New Jersey's eminent domain law); DRSMF ¶ 3; Pls.' Opp'n Br. 11 ("[a]lthough [the Township] ratified its settlement, it has

7

taken no steps to implement formal condemnation"); *see also id.* ("[t]he lack of action by [the Township] supports Plaintffs['] contention that its property has been frozen and rendered worthless").) Indeed, Defendant has submitted persuasive evidence establishing that the plan to acquire the Property outlined in the settlement agreement did not amount to a final decision to acquire the Property. (*See, e.g.*, Feb. 4, 2019 Super. Ct. Op. Approving Settlement Agreement 16 ("aspects of the Township's Plan regarding the [Property] raises yet unresolved issues concerning (1) whether the Township will follow through to gain control of the site; and (2) whether the site is available, feasible[,] and suitable to meet the Township's proposal, including issues involving access, sewer[,] and water availability."). Courts in this District have held that where "[d]efendants have not initiated condemnation proceedings in New Jersey Superior Court pursuant to N.J. [Stat. Ann. § 20:3-8] . . . no final decision has been made as to [a] [p]laintiff's property. Accordingly, following the Supreme Court's decision in *Williamson County* . . . Plaintiff's claim for relief pursuant to the Fifth Amendment is not ripe." *RLR Invs.*, 2007 WL 1797658, at \*5; *see also Save Ardmore Coal.*, 419 F. Supp. 2d at 676 ("[N]o final decision has been made by the local, state or federal Defendants regarding the taking of any private property without just compensation, let alone the taking of Plaintiffs' property. Thus, Plaintiffs' takings claim is not ripe for review." (emphasis omitted)).

*RLR Investments* is instructive. In that case, a New Jersey municipality "adopted and implemented a number of resolutions and ordinances aimed at redeveloping" a certain property. *RLR Invs.*, 2007 WL 1797658, at \*1. These actions included designating the property as an "area in need of redevelopment" under the State's Local Redevelopment and Housing Law. *Id.* After learning that the town was considering acquiring the property and using it for, among other things, a new Home Depot, "[p]laintiff advised the Town that its location was vital to the operation of its

8

business and that it wanted and needed to stay in its present location." *Id.* at *2. For its part, the municipality informed the plaintiff that it "intended to acquire the property by negotiated sale and/or condemnation and transfer the property to the private redeveloper in order to construct a Home Depot on the site." *Id.* Plaintiff brought suit challenging the redevelopment actions taken by the municipality. *Id.*

The District Court rejected the takings claim in *RLR Investments* as unripe. The Court found that "[t]he designation of [p]laintiff's property as blighted is not a final decision because [d]efendants have yet to condemn [p]laintiff's property by filing a condemnation complaint in Superior Court." *Id.* at *5. Nor had the municipality "passed or proposed an ordinance authorizing condemnation of the [p]roperty—a necessary act for the filing of a condemnation action." *Id.* (citing *Twp. of Hillsborough v. Robertson*, 260 N.J. Super. 37 (N.J. Super. Ct. Law Div. 1992)). "As such, no final decision has been made as to [p]laintiff's property." *Id.*

Similarly, in the case at bar, the mere designation of the Property as a target of potential acquisition by Defendant is not a final decision as to the Property. While the municipality has announced that it "*intends* to construct" affordable housing on the site, (HEFSP 26 (emphasis added)), these "'some day' intentions do not show that condemnation of Plaintiff's property is imminent." *RLR Invs.*, 2007 WL 1797658, at *5. As the Superior Court noted, the ultimate result of the Township's announcement that it "intends to construct" affordable housing on the Property depends on a number of contingencies that may or may not be realized, including: "(1) whether the Township will follow through to gain control of the site; and (2) whether the site is available, feasible[,] and suitable to meet the Township's proposal." (Feb. 4, 2019 Super. Ct. Op. Approving Settlement Agreement 16.) Moreover, just as in *RLR Investments*, here, it is undisputed that Defendant "has taken no steps to implement formal condemnation." (Pls.' Opp'n Br. 11.)

9

It is true, as Plaintiffs suggest, that the Supreme Court has recently overturned parts of its previous takings ripeness analysis. In *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), the Supreme Court overruled its previous holding in *Williamson* and held that plaintiffs would no longer need to exhaust state remedies before claiming a violation of the Takings Clause. The Court held that "the state-litigation requirement imposes an unjustifiable burden on takings plaintiffs, conflicts with the rest of our takings jurisprudence, and must be overruled." *Id.* at 2167. As Plaintiffs argue, following *Knick*, "Defendant cannot delay Plaintiff[s'] federal court action by asserting that a [s]tate [c]ourt remedy must first be pursued." (Pls.' Opp'n Br. 8.)

But nothing in *Knick* abrogates the finality requirement illustrated by *RLR Investments*. In *Knick*, the Supreme Court explicitly found that "the validity of this finality requirement . . . is not at issue here." *Knick*, 139 S. Ct. at 2169. Indeed, the exhaustion requirement and the finality requirement are analytically distinct. Although *RLR Investments* was decided before *Knick*, it illustrates this distinction. In *RLR Investments*, the District Court held that the plaintiff did not need to exhaust its state remedies before bringing a takings claim because an attempt to obtain just compensation via exhaustion would have been futile under the facts presented to it. *RLR Invs.*, 2007 WL 1797658, at *4. Nevertheless, the District Court found that plaintiff's takings claims failed to establish the finality prong of the takings ripeness analysis. *Id.* at 4-5. Just as in *RLR Investments* and consistent with *Knick*, even where plaintiffs are not required to exhaust state remedies, their takings claims can still be dismissed on ripeness grounds for lack of finality.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted. Plaintiffs' Motion for Summary Judgment, accordingly, will be denied as moot. The Court will enter an Order consistent with this Memorandum Opinion.

*MICHAEL A. SHIPP*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**